PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

IN THE MATTER OF THOMAS F.
LIOTTI, ESQ.,

*Respondent.*

No. 10-9504

On Notice to Show Cause Before the
Fourth Circuit Standing Panel on Attorney Discipline.

Argued: October 27, 2011

Decided: December 2, 2011

Before MOTZ, KING, and DUNCAN, Circuit Judges.

---

Public admonishment imposed by published opinion. Judge
King wrote the opinion, in which Judge Motz and Judge Dun-
can joined.

---

## COUNSEL

Thomas Edward Vanderbloemen, GALLIVAN, WHITE &
BOYD, P.A., Greenville, South Carolina, for Respondent.
Michael L. Rigsby, MICHAEL L. RIGSBY, P.C., Richmond,
Virginia, as prosecuting counsel.

---

**OPINION**

KING, Circuit Judge:

By Notice to Show Cause issued on January 5, 2011 (the "Notice"), this Court's Standing Panel on Attorney Discipline initiated disciplinary proceedings against respondent Thomas Liotti, a member of the New York bar and the bar of this Court, arising from his conduct during the appeal in *United States v. Giannone*, No. 07-4844(L).[1] The Notice levied five separate charges against Liotti for violations of the applicable rules of professional conduct, primarily for factual misrepresentations. Liotti responded to the Notice, acknowledging various misrepresentations but maintaining that they were neither intentional nor worthy of disciplinary action. We disagree and conclude that Liotti's conduct did, in fact, contravene the applicable rules of professional conduct. As a result, as further explained below, we impose a public admonishment.[2]

I.

A.

The five charges contained in the Notice are summarized and explained as follows.

---

[1]On March 8, 2007, Mr. Liotti's client in the underlying proceedings, Jonathan Giannone, was convicted by a jury in the District of South Carolina of three counts of violating 18 U.S.C. § 1343 (wire fraud), plus two counts of violating 18 U.S.C. § 1028A (aggravated identity theft). Giannone was sentenced to sixty-five months in prison. Liotti was retained to represent Giannone at trial, and he handled Giannone's appeal to this Court on a court-appointed basis. By our unpublished decision of January 7, 2010, we affirmed Giannone's convictions, vacated his sentence, and remanded for resentencing. *See United States v. Giannone*, 360 F. App'x 473 (4th Cir. 2010) (per curiam).

[2]Until now, these disciplinary proceedings have for the most part been under seal.

1.

According to the First Charge, Mr. Liotti improperly joined separate and unrelated quotations in the *Giannone* reply brief, causing them to appear as a single exchange on the same topic. By combining these separate passages — located two pages apart in the trial transcript — as a single series of questions and answers, Liotti created the erroneous impression that the passages were actually sequential, rather than separate, the effect of which tended to support his contention that the government had failed to prove an offense.

2.

The Second Charge alleges that Mr. Liotti, in the *Giannone* opening brief, falsely accused the trial judge of suppressing evidence. Namely, Liotti asserted on appeal that the judge improperly withheld a letter written to her by an informant, revealing that the informant had used illegal drugs while working with government agents in Giannone's case. The informant's letter — dated March 1, 2007, four days prior to the March 5 commencement of Giannone's trial — was both postmarked and received by the district court after the trial concluded on March 8.[3] In denying Giannone's request for a

---

[3]The informant's letter was submitted to our Court in the *Giannone* joint appendix, but was filed by the district court in the informant's criminal case with the following docket entry:

> ORDER as to Brett Shannon Johnson: This court received a letter from Defendant Brett Johnson on March 13, 2007. This letter appears to have been postmarked March 12, 2007, although the letter itself is dated March 1, 2007. The Clerk is directed to file this letter as of the filing date of this order and maintain the original letter and its envelope until further order of this court. Signed by Judge Cameron McGowan Currie on 3/16/2007.

Docket Entry No. 54, *United States v. Johnson*, No. 3:06-cr-01129 (D.S.C. Mar. 16, 2007). The informant's letter to the judge is also logged on the docket sheet of Giannone's district court proceedings as an exhibit to Giannone's pro se habeas corpus petition. *See United States v. Giannone*, No. 3:06-cr-01011 (D.S.C. Sept. 7, 2010).

new trial, the judge found that the court had received the letter on March 13, 2007. Also, according to the judge, the letter appeared to be postmarked March 12, 2007. The envelope containing the letter reflects that the U.S. Marshal x-rayed it on March 13, 2007. Notwithstanding the court's explicit finding to the contrary, Liotti asserted in the *Giannone* opening brief that the judge "received the letter on March 1, 2007," and the brief insisted that she "sat on this letter during the course of the trial." Br. of Appellant 80.

3.

The Third Charge alleges that, in the *Giannone* opening brief, Mr. Liotti misrepresented facts pertinent to an unsuccessful change of venue motion. In support of his appellate contention that venue should have been transferred to New York, Liotti accused the government of intentionally overestimating the expected length of Giannone's trial — i.e., that it would last approximately two weeks — and maintained that the government had padded its estimate in order to keep the case in South Carolina and defeat the venue motion. In reality, it was Liotti who estimated the trial would last two weeks; the government actually disagreed, surmising that the trial would last "3-4 days." *See United States v. Giannone*, No. 3:06-cr-01011 (D.S.C. Mar. 2, 2007). In its response brief, the government exposed Liotti's misstatement and Liotti replied in an inappropriately discourteous manner.

4.

As to the Fourth Charge, the Notice alleges that Mr. Liotti made misrepresentations in a sworn Declaration filed in the district court and invoked on appeal. Liotti's Declaration asserted, inter alia, that Giannone had conducted an internet chat on a computer in Liotti's office prior to trial, and that the chat established Giannone's innocence. By filing the Declaration, Liotti could have become a witness in his client's case. On appeal, Liotti relied on the Declaration to argue his cli-

ent's innocence, even though Giannone had made post-trial admissions to a government agent that he had faked the internet chat. Liotti did not, however, reveal his client's post-trial admissions to this Court.

## 5.

Finally, the Fifth Charge alleges that, in the *Giannone* reply brief, Mr. Liotti asserted without any record support that two of the Secret Service agents involved in Giannone's investigation had been fired for misconduct. At oral argument, Liotti sought to downplay the unsupported revelation, offhandedly maintaining that the government was in a better position to provide evidence concerning disciplinary actions against the officers.[4]

## B.

The Notice directed Mr. Liotti to demonstrate why appropriate disciplinary measures, authorized by the Local Rules of Appellate Procedure of this Court (the "Local Rules"), should

---

[4]After setting forth the details of the five charges, the Notice summarized the charges as follows:

> The [First Charge] described supports the conclusion that Respondent Liotti combined transcript excerpts in a manner that enabled him to misstate the evidence of record in support of defendant Giannone's appeal. The [Second Charge] shows that Respondent falsely accused the trial judge of suppressing evidence during trial when the record clearly supported the trial judge's explicit finding that the evidence was received *after* trial. The [Third Charge] indicates that Respondent falsely accused the government of misleading the trial court and, when corrected, criticized opposing counsel in a discourteous manner. In the [Fourth Charge], Respondent submitted a witness declaration in a case in which he was serving as advocate and failed to correct inaccuracies in the declaration. And the [Fifth Charge] shows that Respondent made factual allegations in support of his client for which he had no basis.

Notice 8-9.

not be imposed. The Local Rules provide, in the pertinent part of Rule 46(g), that

> (1)   A member of the bar of this Court may be disciplined as a result of
>
> . . .
>
> (c)   Conduct with respect to this Court which violates the rules of professional conduct or responsibility in effect in the state or other jurisdiction in which the attorney maintains his . . . principal office[.]

Local R. App. P. 46(g)(1)(c).

The Notice referenced relevant portions of the New York Rules of Professional Conduct (the "New York Rules"), which apply in these proceedings because Mr. Liotti's office is located in the State of New York. The New York Rules provide, inter alia, that a lawyer shall not "engage in conduct involving dishonesty, fraud, deceit or *misrepresentation*[.]" N.Y. Rules Prof'l Conduct R. 8.4(c) (emphasis added). The New York Rules further specify that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." N.Y. Rules Prof'l Conduct R. 3.3(a)(1), 3.3(f)(2). These Rules also bar a lawyer from knowingly "offer[ing] or us[ing] evidence that the lawyer knows to be false" and "engag[ing] in undignified or discourteous conduct." N.Y. Rules Prof'l Conduct R. 3.3(a)(3). A lawyer is precluded from acting as an advocate in a matter in which he is likely to be a witness, and he is barred from making false statements concerning the integrity of a judge. *See* N.Y. Rules Prof'l Conduct R. 3.7, 8.2(a).

## II.

## A.

In response to the Notice, Mr. Liotti filed his affidavit addressing the five charges (the "Affidavit"), as well as several supporting letters and a response brief.

## 1.

As explained in more detail below, the admissions contained within Mr. Liotti's Affidavit by themselves support the imposition of discipline. We thus set forth the Affidavit *in haec verba*:

> THOMAS F. LIOTTI, ESQ., Respondent named above, hereby deposes and states the following to be true under the penalty of perjury:
>
> 1.  I have been admitted to practice law in New York since 1977 and have never been disbarred or suspended from practice. My practice is based in Garden City, New York, and focuses in part on the defense of clients charged with criminal wrongdoing.
>
> 2.  Jonathan Giannone's family contacted me about representing him in the case underlying these proceedings. The Giannone family is from New York and has no ties to South Carolina, where that case was pending.
>
> 3.  After his conviction in district court, Giannone asked me to continue representing him on appeal. Because Giannone did not have sufficient funds to pay me as a retained lawyer, I offered to see if the Fourth Circuit Court of Appeals would permit me to continue as appointed counsel under the Crim-

inal Justice Act ("CJA"). I have previously served as a CJA lawyer in the district courts for the Eastern District of New York and the Southern District of New York, as well as in the U.S. Court of Appeals for the Second Circuit.

4. I have reviewed the Notice to Show Cause. I understand the court's concerns and wish to state that I had no intention of misleading the court, misstating the evidence, or otherwise violating the court's rules or my obligations as a lawyer.

5. As to the first ground in the Notice, I understand how the two distinct excerpts on page 32 of my reply brief should not have been combined without a qualification or explanation. I am not sure how this oversight occurred, but I take responsibility for it and regret that it occurred.

6. As to the second ground in the Notice, I had no intention to impugn the district court or accuse the district judge of an impeachable offense. I recognize that my arguments on this point should have been handled differently so as to avoid the appearance that I was attacking the court's credibility or integrity, which was never my intention.

7. As to the third ground in the Notice, I was mistaken about who made an estimate for a two-week trial. I believe that at some point, whether on or off the record, the government had made estimates consistent with a two-week trial, but I recognize that the record does not reflect this.

8. As to the fourth ground in the Notice, I was never aware that Giannone was manipulating the internet chat or misrepresenting what occurred. I am

not knowledgeable in the way of computers and would not know whether the chat was being faked.

9. As to the fifth ground in the Notice, I concede that there was not direct evidence establishing that the Secret Service agents were fired as a result of their conduct in the investigation. However, while there may ultimately be some validity to Giannone's claims on this point, I should have couched my argument more in terms of what the evidence in the record established.

10. I wish to reiterate that I have not knowingly intended to violate my obligations as an attorney and do not believe that I have knowingly submitted false evidence or argument, misrepresented the record, or made false accusations warranting discipline.

FURTHER AFFIANT SAYETH NAUGHT.

J.A. 269-71.[5]

2.

In further response to the Notice, Mr. Liotti submitted several supporting letters from his bar colleagues attesting to his good character. The authors of these letters vouch for Liotti's legal ability and professional competence, but, for the most part, do not discuss the details of these disciplinary proceedings.[6] The letters from Liotti's colleagues also describe him as a passionate and zealous advocate for his clients. Included are

---

[5]Citations herein to "J.A. ___" refer to the contents of the joint appendix filed by the parties in this disciplinary proceeding.

[6]One exception set forth the remarks of attorney Michael Kelly of New York, who acknowledges that "as much as I respect and like Tom [Liotti] he seems to have gone overboard in the case at issue here and I certainly do not condone what occurred here." J.A. 325.

letters from two district judges who declined to provide character evidence in the absence of a subpoena or court order. A third district judge advised that Liotti had appeared before him in a number of matters and had always conducted himself appropriately and professionally.

3.

In Mr. Liotti's response brief in this proceeding, he emphasizes that he is an experienced and respected member of the New York bar, having practiced law for more than thirty-three years and attaining an "AV rating" (the "highest possible rating") from *Martindale-Hubbell*. Br. of Resp't 47. His brief, like his Affidavit, addresses each of the charges, essentially admitting their substance, primarily attributing his actions to mistakes and poor judgment, and denying any intentional misconduct. Liotti expresses regret for his actions and contends that the charges, considered either separately or collectively, fail to justify any disciplinary measures.

As to the First Charge, the response brief explains that, in combining two portions of the trial transcript in the *Giannone* reply brief, Mr. Liotti was actually seeking to make two distinct arguments, but now recognizes that he should not have combined the excerpts without proper qualification or explanation. With respect to the Second Charge, Liotti's response brief maintains that he was reasonably permitted to call into question the district judge's finding that the informant's letter was not received until after Giannone's trial. Concerning the Third Charge, the brief urges that Liotti was under the incorrect impression that it was the prosecutor, rather than he, who estimated the trial would last two weeks.

Addressing the Fourth Charge, the response brief asserts that Mr. Liotti's Declaration was merely a proffer of what the evidence would show, and that the Declaration was implicitly (i.e., without objection from the government or the district court) sanctioned by the court. Regarding his failure to correct

the inaccuracies of the Declaration, Liotti suggests that Giannone's post-trial admissions were unclear and later recanted, and that such corrections would have been immaterial in any event. With respect to the Fifth Charge, the response brief argues that Liotti believed that the government agents had been fired for misconduct. This contention was apparently based on Giannone's and an informant's allegations, coupled with evidence that the agents were no longer employed with the Secret Service. Liotti admits that the *Giannone* record does not confirm his personal belief, but contends that there is no direct evidence that he was wrong.

## B.

On October 27, 2011, Mr. Liotti, his lawyer, and the prosecuting counsel appeared in this Court for hearing and argument.[7] Liotti's lawyer attributed each charge to mistake, poor judgment, or Liotti getting "carried away" in his arguments, steadfastly maintaining that none of the charges warrants formal discipline. His lawyer proposed that the informal discipline that Liotti has already endured — for example, responding to the Notice and making pleas to colleagues and judges for supporting letters — constitutes sufficient punishment for any perceived transgressions. Emphasizing that Liotti's misconduct falls short of justifying discipline, counsel entreated us to either dismiss the proceedings or impose a private discipline.

Mr. Liotti's lawyer argued that attorneys frequently make mistakes or misrepresentations during the appellate process, for which they are rarely required to answer. For that reason, counsel suggested, Liotti may have lacked proper notice that his conduct could lead to disciplinary proceedings. Finally, counsel proposed that we consider issuing Liotti a "caution

---

[7]Rule 46(g) of the Local Rules provides that when, as here, a respondent in disciplinary proceedings requests a hearing, the matter shall be heard by the Standing Panel on Attorney Discipline. *See* Local R. App. P. 46(g)(9).

letter," a confidential type of discipline used in New York when a lawyer's behavior warrants comment by a court but does not rise to the level of publicly sanctionable misconduct.[8]

The prosecuting counsel responded that the cumulative effect of the five charges against Mr. Liotti brings this case well within the disciplinary compass. Refuting Liotti's assertion that his experience and competence make him less culpable, the prosecuting counsel maintained that those factors render his misconduct less forgivable. According to the prosecuting counsel, experienced attorneys have a greater obligation than their younger and greener colleagues to know and adhere to the rules of professional conduct. Although counsel acknowledged the presence of mitigating factors that we must assess, he asserted that the admissions made in Liotti's Affidavit are alone sufficient to justify the imposition of discipline. And, counsel argued, because an important purpose of attorney discipline is the deterrence of other members of the bar from engaging in similar conduct, any such discipline should be publicly disclosed.

## III.

We agree with the American Bar Association Standards for Imposing Lawyer Sanctions (the "ABA Standards") that the proper standard of proof for violations of the relevant rules of professional conduct is "clear and convincing evidence." *See* ABA Standards § 1.3. The panoply of available sanctions for attorney misconduct includes disbarment, suspension, fine, public reprimand, and private reprimand. *Id.* §§ 2.2 – 2.10. When such misconduct has been proven by clear and convincing evidence, we are obliged in formulating the appropriate discipline to consider both aggravating and mitigating factors,

---

[8]For a discussion of New York caution letters, see "Report Concerning Letters of Caution and Admonition," Supreme Court of the State of New York Appellate Division, Attorney Grievance Committees, *available at* http://www.nycourts.gov/courts/ad4/AG/AG-caution.htm.

as well as the "potential or actual injury" resulting from the misconduct. *Id.* § 3.0.

## A.

### 1.

Turning to the merits of the charges against Mr. Liotti, we examine them in ascending order of seriousness. First, we assess Liotti's erroneous quoting of the trial transcript in the *Giannone* reply brief (First Charge) and his incorrect claim on appeal that the government had estimated Giannone's trial would last two weeks (Third Charge). On the First Charge, combining two separate parts of the trial transcript — thereby creating the look of a fluid conversation — was clearly inappropriate. Liotti now states that he is "not sure how this oversight occurred but [takes] responsibility for it and regrets that it occurred." Aff. ¶ 5. Nevertheless, Liotti accurately cited the transcript pages for the quotations, revealing — if the record were consulted — that the questions and answers recited in the *Giannone* reply brief were actually obtained from different parts of the transcript. Thus, Liotti's conduct underlying the First Charge is arguably mitigated because a careful reader could access the accurate origins of the misquoted evidence.

With respect to the Third Charge, Liotti's statement in the *Giannone* appeal concerning the government's position on the potential duration of Giannone's trial was patently wrong, and no one was in a better position to know that than Liotti. When the government corrected Liotti on this point in its response brief, Liotti became antagonistic, asserting in reply:

> With respect to the government's strenuous posturing regarding questions about the ultimate length of trial, this Court may now take judicial notice of the government's playground-like tattle-tale approach in

> this case. If the government lawyers want to be right on this single point, so be it.

J.A. 240. Put simply, Liotti's initial statement of the parties' positions, set forth in the *Giannone* opening brief, was a misrepresentation of the record. Liotti's concession in the reply brief, though inartfully made, may have partially corrected the misrepresentation. In his Affidavit, however, Liotti frankly admits that he "was mistaken about who made an estimate for a two-week trial." Aff. ¶ 7. In sum, Liotti's actions in connection with the First and Third Charges constitute misrepresentations to the Court.

2.

As to the Fifth Charge, Mr. Liotti's statement in the *Giannone* reply brief that two of the investigating agents had been fired for misconduct was apparently based on information from an informant and Liotti's own client, coupled with the undisputed fact that the agents were no longer employed by the Secret Service. Confirmation of that fact came from a post-trial declaration of the Service's Deputy Director, which was obtained by Giannone through an FOIA request in another case. The declaration does not, however, discuss or reveal anything about discipline against the agents. In his Affidavit, Liotti admits that, in making the contention that the agents had been fired for misconduct, he "should have couched [his] argument more in terms of which the evidence in the record established." Aff. ¶ 9. The absence of evidence disproving Liotti's allegation that the agents were fired for misconduct, however, does little to ameliorate the impropriety of his unsupported statements. In the circumstances, Liotti should have known that the record did not support his assertion that the Secret Service agents had been fired for misconduct.

3.

On the Fourth Charge, relating to the Declaration of Mr. Liotti concerning the internet chat between Giannone and

another individual, Liotti maintains that he has not contravened Rule 3.7 of the New York Rules, which provides that "a lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless . . . the testimony is authorized by the tribunal." New York courts have interpreted Rule 3.7 to require the disqualification of counsel upon the movant's showing that the attorney's testimony is necessary and that there is a substantial likelihood of prejudice if the attorney continues to act as an advocate. *See Capponi v. Murphy*, 772 F. Supp. 2d 457, 471-72 (S.D.N.Y. 2009).

Mr. Liotti's Declaration states that it was his associate, lawyer Drummond Smith — not Liotti himself — who witnessed the internet chat involving Giannone and another person. Because Smith was the witness to the chat, Liotti probably would not have been permitted to testify to what Smith saw. Moreover, evidence regarding the internet chat was otherwise available to the parties at trial, and the government never sought to call Liotti as a witness or urge his disqualification as counsel. As a result, this aspect of the Declaration does not give rise to a violation of Rule 3.7.

Nevertheless, in using the Declaration and the internet chat to support his appellate contentions, Mr. Liotti neglected to inform this Court that Giannone had already admitted to the government in a post-trial interview that he had faked the internet chat. Liotti apparently made the Declaration on the basis of an internet dialogue that took place in his office but outside his presence, and his Affidavit and brief admit that he is not proficient with computers. *See* Br. of Resp't 37 ("Liotti is not knowledgeable in the way of computers"); Aff. ¶ 8. Liotti's failure to reveal in the *Giannone* appeal that his client had already admitted to the government that the internet chat was a fake constituted a failure to correct a prior misrepresentation of material fact. Liotti maintains, however, that he did not know that the internet chat was a fake — even though Giannone had admitted that fact to the government —

because Giannone later denied making the admission.[9] Giannone's recantation carries little weight, however, inasmuch as Smith had witnessed Giannone's post-trial admission to the government. Consequently, Liotti should have known that the statements in his Declaration with respect to the internet chat were unfounded. And he should have clarified those facts to the Court. *See* N.Y. Rules Prof'l Conduct R. 3.3(a)(1).

4.

The most serious of the charges lodged against Mr. Liotti is the Second Charge — Liotti's false accusation that the district judge suppressed the informant's letter. Those assertions constitute an unwarranted misrepresentation of the record and an unsupported impugnment of the judge's character. Nevertheless, it appears from his present contentions that Liotti was seeking to argue in the *Giannone* appeal that, because the informant's letter was dated March 1, 2007, the judge's finding of fact concerning her receipt of the letter on March 13, 2007, was clearly erroneous.[10] In any event, Liotti now argues that the judge's finding with respect to the date she received the letter was not conclusive. That is not, however, how he posited the proposition in Giannone's appeal.

In his Affidavit, Liotti recognizes "that [his] arguments on this point should have been handled differently so as to avoid the appearance that [he] was attacking the court's credibility or integrity[.]" Aff. ¶ 6. Regardless of whether Liotti thought he was entitled to present a good faith challenge to the court's

---

[9]In his reply to the government's response to his pro se motion for a new trial, filed in the district court on August 11, 2008, Giannone denied admitting to a government agent that he faked the internet chat in Liotti's office. *See* J.A. 85-86.

[10]In her findings, the district judge perceived the postmark on the envelope containing the informant's letter to be March 12, 2007, and she specifically found that the letter was not received by the court until March 13, 2007. The envelope was stamped "Postage Due 48c," and reflects "Item X-Rayed by USMS DM 3/13."

findings of fact, his assertions about the trial judge in the *Giannone* appeal, together with the manner in which he presented them, constituted unfounded accusations against the judge and contravened the applicable rules.

### B.

Consistent with the foregoing, we are satisfied that the factual allegations in the Notice regarding misrepresentations to the Court are supported by clear and convincing evidence. More specifically, Mr. Liotti made misrepresentations to the Court, in contravention of Rule 8.4 of the New York Rules, which provides, in pertinent part, that a lawyer shall not "engage in conduct involving . . . misrepresentation[s]." Liotti's misrepresentations in the *Giannone* appeal encompass the following:

- Presenting two unrelated portions of a trial transcript as a single conversation;

- Incorrectly contending that the government had purposefully overestimated the length of Giannone's trial;

- Inappropriately alleging, without factual support, that two agents involved in Giannone's investigation had been fired for misconduct;

- Failing to disclose to the court Giannone's admission that the internet chat had been faked;

- Relying on the Declaration to support the legitimacy of an internet chat of which he had no personal knowledge; and

- Alleging, without factual support, that the presid-

ing judge had suppressed evidence relating to Giannone's trial.[11]

Because Mr. Liotti's conduct during the *Giannone* appeal violated the New York Rules, it also contravened the Local Rules. *See* Local Rules App. P. 46(g)(1)(c).

IV.

As we have heretofore recognized, "our adversary system depends on a most jealous safeguarding of truth and candor." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 463 (4th Cir. 1993). One of the most important aspects of the work of an appellate lawyer is the obligation to provide the court with a fair and accurate presentation of the relevant facts. Indeed, many of our colleagues on the bench would characterize that obligation as paramount, and there is no valid reason for any lawyer to do otherwise. As John Adams explained in his successful defense of the British soldiers charged in the Boston Massacre, "facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence." David McCullough, *John Adams* 52 (Simon & Schuster 2001). Our good colleague Judge Niemeyer, writing for the Court in *Shaffer Equipment*, emphasized the importance of an accurate presentation of the pertinent facts, aptly relating:

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. . . . Even the sligh-

---

[11]We deem it unnecessary to resolve any issue concerning whether Mr. Liotti's conduct contravened any other provision of the New York Rules. As a result, we dispose of this proceeding solely on the basis of our Rule 8.4 findings. In so doing, we confirm that we agree with the prosecuting counsel that the admissions made in Liotti's Affidavit are alone sufficient to justify the imposition of discipline.

test accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process.

11 F.3d at 457. Misrepresentations of fact by an officer of the court will, if ignored, cast a menacing shadow on a judicial system that is designed to illuminate truth and promote fairness.

As Mr. Liotti's response brief acknowledges, a lawyer is charged with the challenging role of advocating zealously for his client and at the same time observing the applicable rules of professional conduct. Sustaining a lawyer's "dual obligations to clients and to the system of justice" is a far from trifling responsibility. *In re Snyder*, 472 U.S. 634, 644 (1985). As a result, the privilege of bar membership must be jealously guarded, and loose footing on the high standards of professional conduct must find its purchase in balanced discipline.

Although Mr. Liotti's conduct reflects, at best, a troublesome pattern of carelessness, his misrepresentations appear to have been largely discovered by the Court, through its own diligence and the opposing counsel's efforts, prior to the *Giannone* appeal being resolved. As a result, there was no resulting prejudice to either party. We agree with the prosecuting counsel that Liotti's extensive experience and competence as a lawyer constitutes an aggravating factor — rather than a mitigating one — in our evaluation of the discipline issues. In mitigation, however, the record fails to show a history of misconduct on the part of Liotti, and his client was not harmed by his transgressions here. There also does not appear to have been any selfish motive underlying Liotti's actions.

To his credit, Mr. Liotti handled Giannone's appeal on a court-appointed basis and achieved success for his client on the sentencing issues. Furthermore, we readily accept the proposition that Liotti is a capable attorney and that, as a trial lawyer, he possesses a fine reputation for being a zealous

advocate for his clients.[12] Thus, Liotti's misconduct in the underlying appeal appears as an isolated event, and it is inconsistent with his otherwise fine career. And it is commendable that Liotti has now largely recognized and apologized for his misrepresentations, acknowledging that several of his actions resulted from mistakes and poor judgment.

Notwithstanding the foregoing considerations in mitigation, we are constrained to conclude that Mr. Liotti's cumulative conduct warrants some measure of discipline. Our assessment of the pertinent legal principles and authorities reveals that potential disciplines such as disbarment, suspension, or fine generally apply to more serious misconduct than that found here.[13] Nevertheless, Liotti's violations of the applicable rules should not be ignored. According to the ABA Standards, another type of discipline, known as an admonition, may appropriately be utilized

> when a lawyer [has engaged] in . . . isolated instance[s] of neglect in determining whether sub-

---

[12]We are satisfied to reject Liotti's counsel's oral argument suggestion, however, that he was without notice that the misconduct identified herein could warrant the imposition of discipline. By virtue of Liotti's membership in the New York bar and the bar of this Court, he was plainly on notice that conduct violating the applicable rules could result in discipline.

[13]*See, e.g.*, *In re Roman*, 601 F.3d 189 (2d Cir. 2010) (attorney suspended for seven months for misrepresenting evidence and signing his name to briefs that his staff wrote without reviewing them); *Williams v. Leach*, 938 F.2d 769 (7th Cir. 1991) (attorney fined $1000 when she failed to obtain proper service on defendants, failed to follow court rules in litigating claim, failed to address legal issues in her brief, and recited facts without foundation in record); *DCD Programs, Ltd. v. Leighton*, 846 F.2d 526 (9th Cir. 1988) (suspension imposed when attorney made false statements to court and misrepresentations went to heart of appeal); *In re Grimes*, 364 F.2d 654 (10th Cir. 1966) (attorney disbarred for making unsubstantiated claims that judge accepted bribes). *But cf. Holland v. Washington Homes, Inc.*, 487 F.3d 208 (4th Cir. 2007) (declining to impose Rule 46(g) sanctions on counsel for allegedly misrepresenting record).

mitted statements . . . are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding.

ABA Standards § 6.14.

The ABA Standards advise that the purpose of lawyer discipline is to "protect the public and the administration of justice from lawyers who have not discharged . . . their professional duties to clients, the public, the legal system, and the legal profession." ABA Standards § 1.1. The unsettling repetition of Mr. Liotti's misrepresentations and the need to deter others from engaging in similar conduct militate in favor of public discipline. In light of the various mitigating factors, however, the purposes of discipline will be sufficiently served in this proceeding if we temper our disposition with a strong measure of leniency. As a result, the appropriate disposition is the imposition of one of the less severe disciplines available — a public admonition.[14]

Pursuant to the foregoing, Mr. Liotti is hereby

*PUBLICLY ADMONISHED*.

---

[14]The result of this proceeding is, in part, a testament to the skills of Liotti's lawyer, who has ably represented him. It is worth noting that we are equally pleased with the prosecuting counsel's handling of his important duties. The efforts of both of these lawyers are commended.