**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 25-9517**

———————————

In re: ERIC CHIBUEZE NWAUBANI,

      Respondent.

———————————

On Notice to Show Cause Before the Fourth Circuit Standing Panel on Attorney Discipline.

———————————

Submitted:  January 13, 2026                       Decided:  March 11, 2026

———————————

Before QUATTLEBAUM, RUSHING, and BENJAMIN, Circuit Judges.

———————————

Public admonishment imposed by unpublished per curiam opinion.

———————————

**ON BRIEF:** Eric Chibueze Nwaubani, LAW GROUP INTERNATIONAL, CHARTERED, Washington, D.C., as Respondent. Hamilton P. Fox, III, OFFICE OF DISCIPLINARY COUNSEL, Washington, D.C., as Prosecuting Counsel.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This attorney discipline matter stems from attorney Eric Chibueze Nwaubani's briefing submitted in *Bolden v. Baltimore Gas and Electric Co.*, No. 23-2195, 2025 WL 1355304 (4th Cir. May 9, 2025), an employment discrimination appeal argued before this court. Concerned that Nwaubani's briefing contained citations to nonexistent judicial opinions potentially derived from generative artificial intelligence (AI),[1] the court's Standing Panel on Attorney Discipline initiated disciplinary proceedings against Nwaubani to determine whether his conduct violated any of the court's Local Rules of Appellate Procedure. After reviewing the show cause notices, responses and briefing in this case, we determine that Nwaubani's conduct violated Local Rule 46(g)(1)(c). As a result, and as further explained below, we issue a public admonishment.

## I.

We begin with how Nwaubani's conduct came to the attention of the court. During his representation of the plaintiff on appeal in *Bolden*, the *Bolden* panel discovered that a

---

[1] Generative AI is a specific subset of artificial intelligence that "essentially mimics the human brain, to think rather than simply follow rules as most machines do." Samuel Mallick, *Generative AI in the Law*, 42 CORP. COUNS. REV. 157, 158 (2023). The most familiar example for readers may be OpenAI's ChatGPT, which, per OpenAI CEO Sam Altman, had approximately 800 million weekly active users as of October 2025. Jennifer Sor, *Sam Altman touts ChatGPT's 800 million weekly users, double all its main competitors combined,* BUSINESS INSIDER (Oct. 8, 2025), https://www.businessinsider.com/chatgpt-users-openai-sam-altman-devday-llm-artificial-intelligence-2025-10 [https://perma.cc/3WLM-6FKA] (last visited February 23, 2026). Other examples include Google Gemini, Microsoft Copilot and Anthropic's Claude. *See* Lee F. Peoples, *Artificial Intelligence and Legal Analysis: Implications for Legal Education and the Profession*, 117 L. LIBR. J. 52, 57 (2025).

2

case cited in Nwaubani's brief, *Nationwide Mutual Insurance Co. v. Jackson*, 548 U.S. 629 (2006),[2] did not exist. So, it issued an order directing Nwaubani to file a revised brief and show cause as to why he should not be sanctioned. His response to the initial notice denied using generative AI in preparing his briefs and instead stated that he mistakenly cited *Jackson* when he meant to cite a different case, *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992). He also provided a tenuous explanation for why *Darden*, a case concerning the Employee Retirement Income Security Act of 1974, was relevant to his appeal. That said, when Nwaubani filed his revised opening brief, he omitted his earlier argument[3] and did not cite *Darden* at all.

Unfortunately, Nwaubani's reply brief contained other errors, including citations to two more nonexistent cases, *Commodity Futures Trading Commission v. Glencore Ltd.*, 611 F.3d 1330 (Fed. Cir. 2010), and *In re Acres Properties, Inc.*, 100 F.3d 1307 (7th Cir.

---

[2] This opinion contains citations to three nonexistent cases: *Nationwide Mutual Insurance Co. v. Jackson*, 548 U.S. 629 (2006), *Commodity Futures Trading Commission v. Glencore Ltd.*, 611 F.3d 1330 (Fed. Cir. 2010) and *In re Acres Properties, Inc.*, 100 F.3d 1307 (7th Cir. 1996). While we reference them throughout this opinion by name, they are not actual cases.

[3] That omitted argument section was entitled, "Plaintiff was a Temporary Worker and Therefore not Within The Scope of Title VII's coverage." J.A. 49. In that section of his initial opening brief, Nwaubani cited *Jackson* as supporting the statement that Title VII of the Civil Rights Act of 1964 doesn't apply to temporary workers. And his opening brief stated, "Plaintiff's complaint lacks the requisite facts to allege sufficiently that his employment status had been anything other than a 'Temporary Worker' . . . ." J.A. 50. Nwaubani does not explain why, even if *Jackson* were a real case, an argument that his client was a temporary worker outside the protections of Title VII helps his case. In fact, that argument actually undermines his appeal because the implication of that assertion is that the district court should have dismissed the plaintiff's Title VII case.

3

1996). When asked at the *Bolden* oral argument about his sources for the three nonexistent cases, Nwaubani responded that he used LexisNexis, Westlaw and Google.

Later, the Standing Panel on Attorney Discipline issued a supplemental notice to show cause, directing Nwaubani to show cause why he shouldn't be disciplined by the court.[4] It also encouraged Nwaubani to explain his research process and reasoning behind the citations at issue. Nwaubani explained in his response that, similar to his earlier *Jackson* explanation, his citation to *Glencore* was a genuine error because he meant to cite a different case involving a party named Glencore. And while he didn't provide a citation to that decision in his response, he did append a copy of an administrative sanctions proceeding before the Commodity Futures Trading Commission involving a party named Glencore. The proceeding he identified—*In the Matter of: Glencore International AG,*

---

[4] That supplemental show cause notice, however, contained an error. It mistakenly referred to *Darden* as one of the nonexistent cases cited by Nwaubani, instead of *Jackson*. Nwaubani now argues that the error in the supplemental show cause notice amounts to a due process violation because he did not have fair notice of what conduct was improper. "Due process requires that 'a lawyer facing suspension or disbarment [be] entitled to notice of the charges for which such discipline is sought and an opportunity to be heard on those issues.'" *In re Gillespie*, No. 23-1819, 2023 WL 7548181, at *1 (4th Cir. Nov. 14, 2023) (alteration in original) (quoting *U.S. Tr. v. Delafield*, 57 F.4th 414, 419 (4th Cir. 2023)). Specifically, Federal Rule of Appellate Procedure 46(c) provides that discipline may only be imposed after "reasonable notice, an opportunity to show cause to the contrary, and, if requested, a hearing." And similarly, our Local Rule 46(g)(4) requires the clerk issue a notice to show cause prior to the imposition of any discipline under Local Rule 46(g)(1)(c). Here, Nwaubani doesn't dispute notice of any aspect of his challenged conduct other than the mistaken cite to *Darden* rather than *Jackson*. As to that, Nwaubani noted the error in his response to the supplemental notice and confirmed his understanding that *Jackson* was the nonexistent citation all along. Thus, we find that the entirety of process, including the opportunity for Nwaubani to respond to the show cause notices and to request a hearing, afforded him fair notice of the conduct at issue and an opportunity to be heard prior to the court's imposition of any discipline.

4

CFTC No. 22-16, 2022 WL 1963727 (May 24, 2022)—appears to have little or no relevance to his Title VII appeal. His explanation for the citation to the nonexistent *In re Acres* case was similar, with Nwaubani stating he meant to cite to *Dilley v. Holiday Acres Properties, Inc.*, No. 16-CV-91, 2017 WL 2371295, at *1 (W.D. Wis. May 31, 2017), a negligence case arising from an injury at a horse farm, and *Roberts v. Acres*, 495 F.2d 57, 58 (7th Cir. 1974), a civil rights action brought under 42 U.S.C. § 1983, instead. Both *Dilley* and *Roberts* appear to have minimal relevance to the facts or law of *Bolden*. In fact, the *Dilley* decision Nwaubani appended to his response—*Dilley v. Holiday Acres Properties, Inc.*, 905 F.3d 508 (7th Cir. 2018)—was different from the *Dilley* decision he said he meant to cite. And Nwaubani doubled down that he did not use generative AI.

After consideration of Nwaubani's second response, the Standing Panel on Attorney Discipline ordered formal briefing, appointed prosecuting counsel and scheduled oral argument.[5]

## II.

While we ordinarily apply a standard of *review*, the proceeding before us is an original one. So, we first ask what standard of *proof* applies. The answer—clear and convincing evidence. *In re Liotti*, 667 F.3d 419, 426 (4th Cir. 2011) ("[T]he proper standard

---

[5] In Nwaubani's opening brief, however, he indicated that while his second response requested "the opportunity for a hearing before any determination [was] made," J.A. 175, he was no longer requesting oral argument, and that oral argument would not "meaningfully assist the Court's disposition" because the written briefs thoroughly addressed the factual and legal issues. Op. Br. at 30. After further review, the panel agreed and removed the case from the oral argument calendar.

of proof for violations of the relevant rules of professional conduct is 'clear and convincing evidence.'" (quoting A.B.A. Standards for Imposing Lawyer Sanctions § 1.3)); *cf. In re Lattimer*, 223 A.3d 437, 439 (D.C. 2020) ("In a disciplinary case, Disciplinary Counsel must establish a rule violation by clear and convincing evidence.").

**III.**

With that standard in mind, we next identify the ethical rules pertinent to this appeal. Local Rule 46(g) addresses our power to discipline attorney misconduct. It provides that we may discipline lawyers that appear before us for violating the rules of professional conduct or responsibility in effect in the state or jurisdiction where the lawyer's principal office is located. *See* 4th Cir. R. 46(g)(1)(c) ("A member of the bar of this Court may be disciplined by this Court as a result of . . . [c]onduct with respect to this Court which violates the rules of professional conduct or responsibility in effect in the state or other jurisdiction in which the attorney maintains his or her principal office, the Federal Rules of Appellate Procedure, the local rules of this Court, or orders or other instructions of this Court . . . ."). Nwaubani's principal office is in the District of Columbia. So, we look to the District of Columbia Rules of Professional Conduct relevant to this proceeding.

The District of Columbia's Rule 8.4(d) prohibits "conduct that seriously interferes with the administration of justice." And the District of Columbia Court of Appeals has stated that for an attorney's misconduct to be prejudicial to the administration of justice, it must one, be improper; two, directly bear on the judicial process; and three, taint that process in more than a de minimis way. *See In re Hopkins*, 677 A.2d 55, 60–61 (D.C. 1996).

6

But before we apply that test, we first address the potential use of generative AI in *Bolden*. Courts across the country are grappling with how to address the use of generative AI in materials submitted to the court—and nonexistent cases (otherwise known as hallucinations) are the frequent posterchild for problems. *See, e.g.*, *Fletcher v. Experian Info. Sols., Inc.*, No. 25-20086, 2026 WL 456842 (5th Cir. Feb. 18, 2026); *Holmes v. The Univ. of Texas at Austin*, No. 1:24-CV-1135, 2026 WL 297630 (W.D. Tex. Feb. 4, 2026); *Lexos Media IP, LLC v. Overstock.com, Inc.*, No. 22-2324, 2026 WL 265581 (D. Kan. Feb. 2, 2026); *Lifetime Well LLC v. IBSpot.com Inc.*, No. 25-5135, 2026 WL 195644 (E.D. Pa. Jan. 26, 2026); *Hall v. Acad. Charter Sch.*, No. 2:24-cv-08630, 2025 WL 2256653 (E.D.N.Y Aug. 7, 2025); *Park v. Kim*, 91 F.4th 610 (2d Cir. 2024); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023). One thing is clear—it is difficult to overlook the increasing prevalence of generative AI. Even traditional legal research services like LexisNexis and Westlaw now offer generative AI features as part of their software. The result—while the use of generative AI is currently perceived by some in the legal field as an exception, it may soon become the norm.

But today we need not delve too deeply into generative AI. In fact, we don't even need to determine whether Nwaubani did or did not use that technology. That's because Rule 8.4(d)'s prohibition of "conduct that seriously interferes with the administration of justice" applies to submitting a brief with nonexistent cases no matter how it is done, whether through generative AI or not. *See Attorneys' Use of Generative Artificial Intelligence in Client Matters*, D.C. Bar, Ethics Opinion 388 (April 2024); *Fletcher*, 2026 WL 456842, at *5 ("Modern generative AI may be a new technology, but the same

7

sanctions rules apply, and the rules we have are well equipped to handle these types of cases."); *Mata*, 678 F. Supp. 3d at 448 ("[E]xisting rules impose a gatekeeping role on attorneys to ensure the accuracy of their filings." (citing Fed. R. Civ. P. 11)).

Attorneys have ethical obligations as to the materials and arguments they advance in federal court. *See e.g.*, Fed. R. Civ. P. 11(b).[6] Of course, making a mistaken citation in a brief does not automatically rise to the level of a Rule 8.4(d) violation. But here, Nwaubani's citation of three nonexistent cases, each with materially different citations than those of the cases he says he meant to cite, does. And while Nwaubani attempts simply to replace the nonexistent cases with existing cases with correct citations, the legal relevance of those existing cases to his arguments in *Bolden* is tenuous at best. A reasonable attorney, in preparing or reviewing his brief, should have discovered the errors. *See In re Hopkins*, 677 A.2d at 61 (holding that conduct is improper where an attorney "either take[s] improper action or fail[s] to take action when, under the circumstances, he or she should act."); *Kideckel v. Foreign Nation of Can.*, No. 1:24-cv-02907, 2026 WL 125208, at *3 (D.D.C. Jan. 16, 2026) ("Obviously, it 'is not acceptable for parties to submit filings to the Court containing citations to legal authority that does not exist, whether drafted with the assistance of artificial intelligence or not.'" (quoting *Williams v. Cap. One Bank, N.A.*, No. 24-cv-2032, 2025 WL 843285, at *7 (D.D.C. Mar. 18, 2025))). In sum, our system of

---

[6] Like most, if not all, state bars, the District of Columbia Bar imposes additional obligations. *See e.g.*, D.C. R. Pro. Conduct 1.1 (competence), D.C. R. Pro. Conduct 3.1 (meritorious claims and contentions), D.C. R. Pro. Conduct 3.3 (candor to tribunal).

justice depends on advocates' candor in submissions to the court. Failures like those in this case impede the administration of justice.

For these reasons, we find by clear and convincing evidence that Nwaubani's conduct was not only improper but also bore negatively on the judicial process in a more than de minimis way. As a result, we find that Nwaubani's conduct violated Rule 8.4(d) of the D.C. Rules of Professional Conduct, and thus our Local Rule 46(g)(1)(c).

## IV.

Turning next to discipline, our Local Rule provides that "[d]iscipline may consist of disbarment, suspension from practice before this Court, monetary sanction, removal from the roster of attorneys eligible for appointment as Court-appointed counsel, reprimand, or any other sanction that the Court may deem appropriate." 4th Cir. R. 46(g)(2). "[I]n formulating the appropriate discipline[,] . . . [we] consider both aggravating and mitigating factors, as well as the 'potential or actual injury' resulting from the misconduct." *In re Liotti*, 667 F.3d at 426 (quoting A.B.A. Standards for Imposing Lawyer Sanctions § 3.0). Nwaubani's self-admitted citation oversights, justified by attenuated explanations for purported correct citations, do little to mitigate our view of his conduct. The facts here should remind all members of the Fourth Circuit Bar that there is no shortcut around the rules. Whether done in modern, innovative ways or old-fashioned ways, citing nonexistent decisions is not permitted.

We dispense with oral argument because the facts and legal conclusions are adequately presented in the materials before this court, and argument would not aid the decisional process. As a result, Nwaubani is hereby,

9

*PUBLICLY ADMONISHED.*